IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALLAN DEAN OWENS,                                    OPINION AND ORDER

                    Plaintiff,                               15-cv-489-bbc

          v.

GREGORY BALOW,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Prisoner and pro se plaintiff Allan Dean Owens is proceeding on claims that defendant Gregory Balow violated plaintiff's constitutional rights by (1) threatening and assaulting plaintiff in retaliation for his filing grievances against defendant and (2) depriving plaintiff of sleep by repeatedly kicking and slamming the food slot on his jail cell door. Defendant has filed a motion for summary judgment, dkt. #60, which I am granting as to both claims, for different reasons. First, plaintiff has not exhausted his administrative remedies as to his claim that defendant threatened and assaulted him. Second, plaintiff's sleep deprivation claim fails because he has not provided evidence from which a reasonable jury could conclude that any of defendant's actions violated plaintiff's Eighth or Fourteenth Amendment rights.

Also before the court is plaintiff's motion for sanctions. Dkt. #50. I am denying that motion because plaintiff has not shown that defendant's counsel engaged in conduct that requires sanctions.

From the parties' proposed findings and the record, it is clear that many facts are disputed, including nearly all of plaintiff's particular allegations about the incidents that are the bases for his two claims.   However, some critical points are not subject to genuine dispute.   I find that the following material facts are undisputed, except where disputes are noted specifically.

## FACTS

Plaintiff Allan Dean Owens is an inmate of the Wisconsin Department of Corrections, currently incarcerated at the Fox Lake Correctional Center.   Between June 18, 2012 and July 3, 2013, plaintiff was held in the Pepin County jail after he had been arrested and was awaiting trial on criminal charges.   During that time, defendant Gregory Balow was the chief deputy of the Pepin County sheriff's department.

While at the jail, plaintiff filed several administrative grievances against defendant and other jail or county officials relating to various issues.   (Plaintiff says that he filed 9-10 of these grievances, though defendant notes that jail records show somewhat fewer.) Throughout his time at the jail, plaintiff experienced physical and mental health problems with varying degrees of severity.   He complained frequently to medical staff and reported having suicidal feelings, anxiety, stress and lack of sleep.

Plaintiff alleges that defendant began to target and harass him, beginning in August 2012, on one occasion coming to plaintiff's cell, flushing a previously-filed grievance down the toilet, shoving plaintiff to the ground and pointing a taser at him, while holding it within

2

two or three feet of his face.  Also, plaintiff alleges that defendant told plaintiff that he could beat him and no one would care.  Plaintiff did not file any grievances or pursue any jail administrative remedies relating to this incident.

Plaintiff also alleges that, starting around the same time and continuing periodically until October 2012, defendant began kicking and slamming the food slot on plaintiff's cell door when he walked by, with the intention of scaring plaintiff and waking him up if he was asleep.  Plaintiff says that he heard these loud slamming noises mostly between the hours of Noon and 5:00 p.m., but they occasionally disturbed him between 7:00 and 8:00 in the morning as well.  (The jail did not place any restrictions on plaintiff's sleeping in his cell during the day and in fact he did sometimes take naps then if he was tired.)

The parties dispute whether the alleged kicking and slamming noise took place at night, and if so how often, whether plaintiff was ever disturbed by the slamming noise between midnight and 5:00 a.m., when breakfast was served at the jail.  It appears also that plaintiff was disturbed on only on a few occasions, if ever, between 10:30, when the lights were off, and 7:00 a.m.  The parties also dispute whether plaintiff ever filed a grievance relating to this alleged  conduct by defendant.

In early January 2013, plaintiff left the jail briefly to have surgery to remove his gallbladder.  Shortly thereafter, he returned to the jail.  He alleges that in early June 2013, defendant approached plaintiff in the library and acted or pretended to act as though he would punch plaintiff in the stomach, stopping his fist just before doing so.  In addition, he allegedly took a single page grievance that plaintiff had filed previously, rolled it up and used

3

it to strike plaintiff in the face, knocking his glasses off his face but causing no injury requiring medical attention. Plaintiff did not file any grievances or pursue any jail administrative remedies relating to defendant's alleged actions in 2013.

## OPINION

Plaintiff has been allowed to proceed on two claims: (1) that defendant violated his First, Eighth and Fourteenth Amendment rights when he shoved him to the ground, threatened him with a taser, threatened to punch him in the stomach and struck him with a grievance form; and (2) that defendant violated his Eighth and Fourteenth Amendment rights when he deprived him of sleep by repeatedly kicking and slamming the food slot on his cell door. Dkt. #13, at 2-3, 6.

Defendant's motion for summary judgment must be granted if "there is no genuine dispute as to any material fact and [defendant] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat defendant's motion for summary judgment, plaintiff must present enough evidence to allow a reasonable jury to find that defendant in fact violated plaintiff's constitutional rights as alleged. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57(1986). In evaluating the record on summary judgment, I must view all facts and draw all reasonable inferences in the light most favorable to plaintiff. Id. at 255.

### A. Retaliatory Threats and Assaults

Defendant contends that he is entitled to summary judgment on plaintiff's claims

4

because plaintiff has not exhausted his administrative remedies.  Under the Prisoner Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Failure to meet this precondition is a ground for dismissal of a prisoner's complaint, Perez v. Wisconsin Department of Corrections, 182 F.3d 532 (7th Cir. 1999).  The Court of Appeals for the Seventh Circuit instructs the lower courts to resolve disputes about the application of this rule before turning to the merits of a claim, wherever this is possible.  Fluker v. Cty. of Kankakee, 741 F.3d 787, 792–93 (7th Cir. 2013) (citing Perez, 182 F.3d at 526).  If the court finds disputed material facts that relate specifically to exhaustion, it may be necessary to hold an evidentiary hearing before reaching other issues.  Wagoner v. Lemmon, 778 F.3d 586, 591–92 (7th Cir. 2015); Pavey v. Conley, 544 F.3d 739, 741–42 (7th Cir. 2008).

It is undisputed that plaintiff did not file any grievances or seek any administrative remedies with respect to the incidents underlying this claim.  Dkt. #76, at ¶¶ 20, 21, 30–34.  Therefore, the only remaining question is whether plaintiff failed to file grievances or seek other administrative remedies regarding these incidents because they were not truly "available" to him within the meaning of § 1997e(a).

The Supreme Court has held that there are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief," and thus exhaustion is not required: (1) where an administrative procedure "operates

as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where an administrative procedure is so opaque or confusing that it is "essentially unknowable," so that no ordinary rational prisoner could follow or use it; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross v. Blake, 136 S. Ct. 1850, 1859–60 (2016).

Plaintiff contends that he did not file grievances about these incidents because he had received no response when he had complained about other earlier incidents, and also because he feared that defendant would retaliate against him. However, plaintiff provides only bare assertions to support these assertions. The record evidence demonstrates that administrative relief was available to him. Thus, he was required to exhaust those available remedies.

First, plaintiff's contention that one or more previous unrelated grievances went unanswered does not show that the administrative grievance system "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Ross, 136 S.Ct. at 1859. He offers no evidence from which I could draw such a conclusion. If plaintiff had filed grievances related about *these* assaults, as opposed to filing grievances about other incidents, and *had* received no response, then he would have done enough to satisfy the exhaustion requirement as to this claim. Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002). Because he did not do so, he cannot show that he pursued available administrative relief as to this claim. Second, the undisputed fact that plaintiff filed numerous grievances (as many as nine or ten total) during his months at the jail

6

demonstrates that he was not generally deterred, prevented or confounded from pursuing this type of administrative relief.  <u>Ross</u>, 136 S.Ct. at 1859.  Finally, plaintiff's admission that he filed at least four grievances against defendant *after* August 2012 suggests strongly that concerns about fear or intimidation did not deter him from filing grievances against defendant specifically at that time.  Dkt. #76 at ¶ 76; <u>Ross</u>, 136 S.Ct. at 1860; <u>Schultz v. Pugh</u>, 728 F.3d 619, 620–21 (7th Cir. 2013) (subjective inquiry whether plaintiff "was in fact deterred" from filing grievances is relevant to deciding issue of exhaustion, in addition to objective inquiry whether "person of ordinary firmness would have been deterred").

In sum, defendant has met his burden to show that plaintiff failed to exhaust his administrative remedies .  Accordingly, I am granting summary judgment to defendant as to this claim and dismissing the claim without prejudice to plaintiff's filing it again at a later time if he exhausts his administrative remedies as to that claim.  <u>Ford v. Johnson</u>, 362 F.3d 395, 401 (7th Cir. 2004).

## B.  <u>Sleep Deprivation</u>

Defendant seeks summary judgment on plaintiff's claim of being deprived of sleep, both because plaintiff failed to exhaust his administrative remedies and on the merits.  With respect to exhaustion of remedies, the parties dispute whether plaintiff filed a grievance related to this claim.  Dkts. # 74 at ¶ 2; # 76 at ¶¶ 19, 29, 35.  However, I need not resolve that dispute.  Even if I assume that plaintiff did exhaust his administrative remedies, defendant would still be entitled to summary judgment in his favor because no reasonable

7

jury could find on this record that defendant's kicking or slamming the food slot on plaintiff's jail cell door was a violation of his constitutional rights. <u>Wagoner</u>, 778 F.3d 586 at 591–93; <u>Fluker</u>, 741 F.3d at 792–93.     Because plaintiff was a pretrial detainee during his time at the jail, the Fourteenth Amendment's due process clause governs this claim, not the Eighth Amendment. <u>Rice v. Correctional Medical Services</u>, 675 F.3d 650, 664–65 (7th Cir. 2012). However, for the kind of claim plaintiff brings, the court of appeals has applied the same standard to both constitutional provisions. <u>Id.</u> To defeat defendant's motion for summary judgment, plaintiff must provide sufficient evidence from which a reasonable jury could find that defendant's actions caused him to be deprived of the "minimal civilized measure of life's necessities." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). As noted in the court's screening order, some courts have found that serious deprivation of sleep can indeed rise to that level. <u>See, e.g.</u>, <u>Walker v. Schult</u>, 717 F.3d 119, 126 (2d Cir. 2013); <u>Harper v. Showers</u>, 174 F.3d 716, 720 (5th Cir. 1999). However, plaintiff has not adduced sufficient evidence to meet that standard.

In <u>Lunsford v. Bennett</u>, 17 F.3d 1574, 1580–81 (7th Cir. 1994), the Court of Appeals for the Seventh Circuit held that "[s]ubjecting a prisoner to a few hours of periodic loud noises that merely annoy, rather than injure the prisoner does not demonstrate a disregard for the prisoner's welfare," and therefore does not amount to a constitutional violation as defined in <u>Rhodes</u>, 452 U.S. at 347. On the other hand, the court of appeals held in a later case "noise [that] occurred every night, often all night, interrupting or preventing [a prisoner's] sleep," could sustain a claim under the Constitution. <u>Antonelli v. Sheahan</u>, 81

F.3d 1422, 1433 (7th Cir. 1996) (citing Williams v. Boles, 841 F.2d 181, 183 (7th Cir. 1988)).

In Cole v. Litscher, No. 04-C-116-C, 2005 WL 627791 (W.D. Wis. Mar. 15, 2005), I applied Lunsford and Antonelli to a sleep deprivation claim similar to plaintiff's and concluded that it did not rise to the level of a constitutional violation:  "Although I do not condone rude and insensitive behavior of prison officials, six nights of interrupted sleep over the course of two months is not a significant departure from the harsh conditions of normal prison life," and "isolated instances of sleep disruption do not show the kind of extreme deprivation necessary to make out an Eighth Amendment violation."  Id. at *4.  See also Hoeft v. Kasten, 691 F. Supp. 2d 927, 931 (W.D. Wis. 2010) (granting defendant's motion for summary judgment where "[p]laintiff complained that the loud noise occurred between breakfast and 10 or 11 p.m.  By implication, this left quiet time for sleep."), aff'd, 393 F. App'x 394 (7th Cir. 2010).

Despite the existence of disputed facts in this case, plaintiff's testimony and his responses to defendant's proposed findings of fact confirm that a few key points are undisputed.  In particular, plaintiff does not dispute the following about the noises that defendant allegedly caused him to endure: they occurred intermittently over a period of approximately two months; they occurred mostly in the afternoon; they occurred at times in the morning (after 7:00 a.m.) and at other times in the late evening (before midnight). Dkt. #76, at ¶¶ 59–73.  Thus, even if I draw all inferences and resolve all factual disputes in plaintiff's favor, the noise pattern does not come close to the disturbances in Antonelli,

9

in which the prisoner was interrupted or prevented from sleep "every night, often all night." 81 F.3d at 1433. Plaintiff's own version of the facts is much closer to the facts in Cole and Hoeft, in which periodic loud noises during the day and occasionally at night were held not to amount to a constitutional violation as a matter of law. Moreover, plaintiff acknowledges that he was not even sure that defendant was the source of every noise that disturbed him and he has no evidence to support his assertion that the kicking and slamming of his cell door was what kept him from sleeping and getting adequate rest. Furthermore, he has no evidence that the noise caused him to suffer the effects of which he complains, such as "getting only two hours of sleep" per night, "suffering from a mental breakdown," and suffering from other medical problems he discussed with jail staff. Dkt. #74, at ¶¶ 3–10.

Thus, viewing the facts in the light most favorable to plaintiff, I conclude that he has failed to provide enough evidence to allow a reasonable jury to find that defendant's actions "'exceeded contemporary bounds of decency of a mature, civilized society.'" Hoeft, 691 F. Supp. 2d at 931 (quoting Lunsford, 17 F.3d at 1579). Defendant's actions may have disturbed plaintiff, but plaintiff has not shown that it amounted to a violation of the Eighth or Fourteenth Amendment. Accordingly, defendant is entitled to summary judgment.


C.  Motion for Sanctions

Plaintiff has filed a motion for sanctions under Federal Rule of Civil Procedure 11 in which he argues that defendant's counsel made misrepresentations to the court regarding the amount of time plaintiff had in which to respond to a discovery filing. Dkts. ##50

(motion) and 57 (plt's reply br.)  It appears that plaintiff is complaining about a statement in a paper filed by defendant shortly before the court denied both parties' motions to compel the production of certain documents.  Dkt. #47.  Unfortunately, plaintiff does not identify exactly what filing or statement by defendant is objectionable and entitles him to relief.  After reviewing the record and the possible documents or misstatements to which plaintiff may be referring, I can see no factual or legal basis under Rule 11, Rule 37 or the court's inherent discretionary power) for imposing the requested sanctions on defendant's counsel.  Accordingly, the motion will be denied.


ORDER

IT IS ORDERED that

1. Defendant Gregory Balow's motion for summary judgment, dkt. #60, is GRANTED.  Plaintiff Allen Dean Owens's claim of sleep deprivation in violation of the Eighth and Fourteenth Amendment is DISMISSED with prejudice.  The claim of retaliatory threats and assaults in violation of the First, Eighth and Fourteenth Amendments is DISMISSED without prejudice.

2. Plaintiff's motion for sanctions, dkt. #50, IS DENIED.

Entered this 27th day of March, 2017.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge

11